**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Peggy Wilson,                                     ) | |
| 757-214th Street                       ) | |
| Pasadena, Maryland 21122                          ) | |
| Telephone: 410-437-9040                           ) | |
|                                                   ) | |
|                     Plaintiff,                    ) | |
| vs.                                               ) | |
|                                                   ) | Civil Action No. |
|                                                   ) | |
| Kirstjen Nielsen, Secretary,                      ) | |
| U.S. Department of Homeland Secretary,)           | |
| 245 Murray Lane, S.W.                             ) | |
| Washington, D.C. 20528-0075                       ) | |
| Telephone: 202-772-5073                           ) | |
|                                                   ) | |
|                                                   ) | Date:  February 12, 2018 |
|                     Defendant.                    ) | |
|                                                   ) | |

**COMPLAINT WITH JURY DEMAND**

**COMES NOW** the Plaintiff, Peggy Wilson, for her cause of action and states as follows:

**INTRODUCTION**

1. This is an action by Plaintiff, a 56-year-old African-American female, who is alleging that she was discriminated against because of her age, race, and sex in violation of 42 U.S.C.§ 2000e, as amended, when she was denied a promotion to the position of Supervisory Financial Management Specialist (GS-15), and the job was given to a Caucasian male, under 40-years old, with substantially fewer qualifications for the job than Plaintiff.  Plaintiff seeks damages for mental pain and suffering, lost wages, benefits and bonuses, damage to her career, punitive damages as well, as attorney's fees.

1

## JURISDICTION AND VENUE

2. Jurisdiction is proper under 28 U.S.C. §1343 and 28 U.S.C. §1331, as the matter involves a federal question under 42 U.S.C.§ 2000e, as amended.

3. The unlawful employment practices described herein were committed within the District of Columbia.  Accordingly, venue in this Court is proper pursuant to 28 U.S.C. §1391(b) and §1391(c).

4. Plaintiff has exhausted her administrative remedies pursuant to 29 CFR §1614.110 in that she received a Final Order from the Defendant on November 29, 2017.

## PARTIES

5. Plaintiff, Peggy Wilson, is a citizen of the United States and, at all times relevant to this complaint, has been an employee of the United States Department of Homeland Security (DHS).  She is also a former U.S. Army Reservist having completed 16 years of military service.

6. Defendant, DHS, is a federal agency within the Executive Branch of the United States Government and has, at all times relevant to this complaint, been the employer of Plaintiff.

## PROCEDURAL BACKGROUND

7. Plaintiff, Peggy Wilson, learned that she had been bypassed for promotion to the position of Supervisory Financial Management Specialist on October 7, 2014.  Plaintiff subsequently filed a formal complaint with the DHS Headquarters EEO Office (HQ EEO) on October 31, 2014.  After an investigation by HQ EEO, Plaintiff filed a request for a hearing with the U.S. Equal Employment Opportunity Commission (EEOC) on May 13, 2015.  The EEOC assigned an administrative judge to her case on September 8, 2016.

The parties filed cross motions for summary judgment on December 2, 2016. On November 3, 2017, the administrative judge - ignoring the selectee's deposition testimony showing no bankcard or supervisory experience, as well as written affidavit testimony from both Plaintiff and a Caucasian supervisor, who simultaneously supervised both Plaintiff and selectee, showing Plaintiff's superior qualifications for the job - found that there was no genuine dispute of material fact and granted DHS's motion for summary judgment. DHS issued a Final Decision on November 29, 2017, pursuant to 29 CFR §1614.110.

### **FACTUAL BACKGROUND**

8. Plaintiff is a 56-year-old African-American female U.S. Army Reserve veteran who is currently employed by the Department of Homeland Security (DHS) as a Management and Program Analyst (GS-14) in the Office of Information and Technology (OIT), Chief of Staff, in the U.S. Customs and Border Protection component (CBP).

9. Plaintiff served in the U.S. Army Reserve from October 1980 to August 1999 and received an honorable discharge on August 11, 1999.

10. Prior to working as Management and Program Analyst in CBP, Plaintiff worked as the DHS Bankcard Program Manager in the Financial Management Division, Office of the Chief Financial Officer (OCFO), Under Secretary of Management, between September 2006 and July 2012.

11. As Bankcard Program Manager, Plaintiff was positioned at the epicenter of the DHS Bankcard program for the 21 DHS components (including Coast Guard, Immigration and Customs Enforcement, Customs and Border Patrol and others), and all DHS Bankcard policy and related significant financial matters passed through Plaintiff's office.

12. As the DHS Bankcard Program Manager between 2006 and 2012, Plaintiff revitalized and oversaw the DHS's Bankcard program, which spends over $1.2 billion dollars per year through approximately 230,000 bankcards.

13. In 2008, Plaintiff led the effort to establish the DHS Debt Card program. This program allows the Federal Emergency Agency (FEMA) the ability to issue electronic payments via a debit card to disaster survivors, the U.S. Coast Guard (USCG) to relocate and evacuate employees, and Immigration and Customs Enforcement (ICE) to make expense payments related to detainees along with other mission-related expenses.

14. While working as the DHS Bankcard Program Manager between 2006 and 2012, Plaintiff interacted with DHS component managers department wide, including Senior Leadership up to the DHS Under Secretary of Management (the third highest ranking person at DHS). This interaction included conducting high-level policy briefings on the status of the four Bankcard programs, which encompassed 16 Purchase card programs, 16 Travel card programs, 11 Fleet card programs, and four Debit card programs.

15. As the DHS Bankcard Program Manager between 2006 and 2012, Plaintiff, on several occasions, wrote testimony for the DHS Chief Financial Officer to use when he appeared before several U.S. congressional subcommittees on disaster relief support, recovery activities, and after-action plans.

16. At the time Plaintiff worked as the DHS Bankcard Program Manager between 2006 and 2012, her supervisors gave her the responsibility of interviewing, hiring, and supervising three employees, including Joanne Skinner, Royce Wilson, and Darlene Brown.

17. At the time Plaintiff worked as the DHS Bankcard Program Manager between 2006 and 2012, her supervisors gave her the responsibility for transferring another employee, Jeff

Dove, who worked as an administrative assistant to the Director of Financial Management, OCFO, into her unit so that he could assist her with the responsibility of managing the four bankcard programs (Fleet, Debit, Travel and Purchase) for the various 21 DHS components.

18. Under Plaintiff's leadership, Jeff Dove and Plaintiff were able to improve the Department-wide bankcard programs by: (1) developing the DHS Fleet Card Manual; (2) developing internal control processes over the bankcard program to comply with OMB Circular A-123, Appendix B; and (3) developing an electronic data mining system called "FMARS" to load daily transactions and run data mining criterion to identify potential fraudulent transactions.

19. Prior to developing FMARS, DHS had no automated standardized process to determine fraud, waste, or abuse on Fleet card accounts. Moreover, the General Service Administration, owner of the Federal Government Bankcard Program, did not have an automated process or technique that DHS could adopt and implement.

20. During the time Plaintiff held the Bankcard Program Manager position between 2006 and 2012, she worked extensively with stakeholders department wide including Ruthanne Beck, GS-14, Procurement Analyst, Procurement Division, U. S. Customs, Border and Protection (CPB), on several bankcard matters which included, but were not limited to, internal control, policy development and other financial related matters.

21. Other DHS component managers with whom Plaintiff worked when Plaintiff held the Bankcard Program Manager position between 2006 and 2012 included Paula Lyons, GS-14, Management Analyst, FEMA, on bankcard and other financial management and internal control related matters. In this capacity, Paula Lyons and Plaintiff partnered and

created the FEMA Disaster Card Manual to help minimize the horrific occurrences during Hurricane Katrina. They also established the Debit Card program to ensure disaster survivors received timely assistance.

22. During the time Plaintiff held the Bankcard Program Manager position between 2006 and 2012, she also worked extensively with Colette Volkmer, GS-14, Deputy Assistant Director, ICE National Purchase Care Program Manager, Office of Acquisition Management, U. S. Immigration and Custom Enforcement, on bankcard, financial management and internal control policy matters.

23. Colette Volkmer, Paula Lyons, Ruthanne Beck, and Jeff Dove all asked Plaintiff to apply for the Assistant Director, Bankcard and Review (Supervisory Financial Management Specialist) job when the vacancy was announced in July 2014, so that she could return to the Finance Management Division, OCFO, and work with them on bankcard policy and financial matters.

24. Colette Volkmer, Paula Lyons, Ruthanne Beck, and Jeff Dove all stated in their affidavits in the Report of Investigation (ROI) that they had never worked with the selectee, Robert Taylor, on any bankcard policy or financial matters prior to October 2014 when he obtained the Assistant Director, Bankcard and Review position.

25. During the time Plaintiff worked as the DHS Bankcard Program Manager between 2006 and 2012, she received above average performance evaluations and mid-year and end- of-year cash awards and bonuses each year.

26. In fiscal year 2011, Plaintiff's direct supervisor, Thomas Boyd, Assistant Director, Financial Policy and Review Branch (GS-15), Finance Management Division, OCFO, gave Plaintiff an Achieved Excellence work performance evaluation. The Achieved

Excellence performance evaluation is the highest performance evaluation that can be awarded to a DHS employee.

27. In 2011, the Financial Policy and Review Branch, Finance Management Division, OCFO, where both Plaintiff and the selectee, Robert Taylor, worked was reorganized and divided into the Bankcard and Review Branch and the Financial Policy Branch. The selectee, Robert Taylor, was assigned to the Financial Policy Branch and Plaintiff was assigned to the Bankcard and Review Branch. Robert Beard became Assistant Director of the Financial Policy Branch and supervised the selectee, Robert Taylor. Thomas Boyd's title was changed from Assistant Director, Financial Policy and Review, to Assistant Director, Bankcard and Review, and he continued to supervise Plaintiff.

28. Thomas Boyd, Assistant Director, Bankcard and Review, retired in June 2014.

29. In July 2014, the DHS advertised Job Announcement No. DHSHQ14-1162987, which sought to hire someone for the Assistant Director, Bankcard and Review job vacancy, under the job description of Supervisory Financial Management Specialist.

30. Job Announcement No. DHSHQ14-1162987 described the position as primarily a job for someone who, among other things, had "specialized experience," and extensive knowledge of bankcard transactions and policy matters as well as supervisory experience over a headquarters staff.

31. In order to qualify for the GS-15 Assistant Director, Bankcard and Review job, the announcement stated, in relevant part, that a candidate "… **must** possess one year of **specialized experience** equivalent to the GS-14 level in the Federal service, or comparable experience not gained through federal service. For this position, **specialized experience** is defined as serving as a financial management technical expert, utilizing a

professional knowledge of financial management and/or internal control principles and procedures to advise internal and external stakeholders and customers on best practices, policies and procedures and systems requirements.  Such experience may include: **Overseeing all of the Department's government charge card programs,** most significantly the purchase card, travel card, and fleet fuel card programs.  **Supervises** a headquarters oversight staff and provides guidance to staff in the DHS component organizations that are responsible for execution of these programs." The Announcement also specifically stated that: "**Substitution of education in lieu of specialized experience may not be used for this grade level."  (Exhibit A) (emphasis added)**

32. DHS Job Announcement No. DHSHQ14-1162987 described a job that was similar to the Bankcard Program Manager position that Plaintiff had held between 2006 and 2012 in the same Financial Management Division, OCFC, in which Plaintiff previously had worked.  The job differed only in that it was at a GS-15 level instead of the GS-14 level. (Exhibit A)

33. After reading the Job Announcement, Plaintiff thought she met all the qualifications for DHS Job Announcement No. DHSHQ14-1162987 and would be the most qualified person for the job since the announcement stated that experience for the job may include: "[o]**verseeing all of the Department's government charge card programs,** most significantly the purchase card, travel card, and fleet fuel card programs," and "[s]**upervises** a headquarters oversight staff and provides guidance to staff in the DHS component organizations that are responsible for execution of these programs."

34. Since Plaintiff thought she was the most qualified person for the advertised Supervisory Financial Management Specialist (Assistant Director, Bankcard and Review) job; in July

2014, she applied for the job advertised under job Announcement No. DHSHQ14-1162987, in the Bankcard and Review Branch, Financial Management Division, OCFO, by submitting a resume and a SF-50. (Exhibit B)

35. In July 2014, Robert Taylor, the selectee, who is a Caucasian male under 40-years-old, **also** applied for the Supervisory Financial Management Specialist (Assistant Director, Bankcard and Review) job in the Bankcard and Review Branch, Financial Management Division, OCFO, described in Job Announcement No. DHSHQ14-1162987, by submitting a resume and a SF-50. (Exhibit C)

36. The selectee, Robert Taylor, had been hired in 2009 by DHS as a staff accountant into the Financial Policy and Review Branch, Financial Management Division, OCFO, and had worked as a staff accountant in that Branch from 2009 to 2011.

37. While working as a staff accountant in the Financial Policy and Review Branch, Financial Management Division, OCFO, between 2009 and 2011, Robert Taylor never had the responsibility or authority to supervise any DHS employees.

38. While working as a staff accountant in the Financial Policy and Review Branch, Financial Management Division, OCFO, between 2009 and 2011, Robert Taylor never had any responsibility to handle DHS bankcard policy matters and never acquired any bankcard experience.

39. After DHS reorganized the Financial Management Division in 2011 and divided the Financial Policy and Review Branch into Bankcard and Review and Financial Policy, and Robert Taylor was assigned to work in the Financial Policy Branch, Robert Taylor did not have the authority or responsibility to handle any DHS bankcard policy matters, did

not acquire any bankcard policy experience, and did not have the responsibility or authority to supervise any DHS employees between 2011 and 2014.

40. The United States Office of Personnel Management (OPM) sets forth the standard selection promotion procedures for federal agencies. (5 CFR §335.103(a)) These procedures require that federal agencies have merit promotion plans in place when promoting individuals. (5 CFR §335.103(a)). DHS follows the federal OPM guidelines and procedures when selecting candidates for promotion. (ROI 000160)

41. OPM and DHS selection procedures require that "[a]ctions under a promotion plan - whether identification, qualification, evaluation, or selection of candidates - must be made without regard to race, color, religion, sex ... national origin, age (as defined by the Age Discrimination in Employment Act of 1967) … or any other non-merit-based factor…" (5 CFR §335.103(b)(1))

42. In accordance with OPM and DHS promotion selection procedure, a DHS promotion panel was assembled in or around June 2014 to evaluate and select the best qualified candidate for the Supervisory Financial Management Specialist job vacancy described in Job Announcement No. DHSHQ14-1162987.

43. The promotion panel that was assembled consisted of Jeffrey Bobich, Director, Financial Management Division, OCFO; Melissa Morgan-Lowden, Deputy Director, Financial Management Division, OCFO; and Christine Burris, Assistant Director, Financial Coordination Branch, Financial Management Division, OCFO.

44. Jeffrey Bobich and Melissa Morgan-Lowden, who are Caucasian, held higher ranking positions in the Financial Management Division of the OCFO than Christine Burris, who is African-American and Asian.

45. During the time that Jeffrey Bobich sat on the promotion panel between approximately June 2014 and October 2014, he had only held the job of Director, Financial Management Division, OCFO, since January 24, 2014.

46. In accordance with OPM and DHS promotion selection procedure, the DHS Office of the Chief Human Capital Officer selected candidates who met minimum qualifications for the Supervisory Financial Management Specialist job and forwarded the resumes and other relevant information of 47 certified candidates on a Best Qualified list to the promotion panel to evaluate and select candidates for personal interviews.

47. The DHS Office of the Chief Human Capital Officer placed Plaintiff's name on the Best Qualified list to indicate that she qualified for the Supervisory Financial Management Specialist job.

48. Although the DHS promotion panel consisted of three persons, only Jeffrey Bobich and Melissa Morgan-Lowden, who are Caucasian, reviewed the 47 candidates' resumes and other pertinent records, and selected candidates from the DHS Chief Human Capital Officer's Best Qualified list to interview for promotion to the Supervisory Financial Management Specialist (Assistant Director, Bankcard and Review) job vacancy.

49. Although Christine Burris, who is African-American and Asian, had been assigned to work on the DHS promotion panel, she was excluded from the promotion panel's selection of candidates from the Best Qualified list to interview and, therefore, she was not given an opportunity to select Plaintiff or any other candidates from the Best Qualified list to interview.

50. As Deputy Director in the Financial Management Division, OCFO, Melissa Morgan-Lowden worked as an upper level supervisor for several years in the Financial

Management Division in which Christine Burris worked and, therefore, was aware of Christine Burris' race and gender.

51. Thus, the DHS promotion panel failed to follow standard and proper OPM and DHS promotion selection procedures, which calls for non-discrimination in the selection process, when it failed to allow Christine Burris to be involved in the selection of a

52. An agency's deviation from or failure to follow OPM standard selection procedures or its own standard selection procedures in the promotion process, such as failing or refusing to allow an African-American and Asian promotion panel member to participate in the selection process, may raise an inference of discrimination at the motion-to-dismiss stage of a race discrimination action under Title VII of the Civil Rights Act of 1964. *Jones v. Ottenberg's Bakers, Inc.*, 999 F. Supp. 2d 185 (D.D.C. 2013).

53. As Deputy Director in the Financial Management Division, OCFO, Melissa Morgan-Lowden worked as an upper level supervisor for several years in the Financial Management Division in which both Plaintiff and the selectee, Robert Taylor, worked; and, therefore, was aware of both person's race, gender, and approximate age when their names appeared on the Best Qualified list.

54. During the process of reviewing the names, resumes, and applications of individuals on the Best Qualified list, Melissa Morgan-Lowden recognized Plaintiff's resume and withdrew it from the stack of candidates, so Plaintiff could not be interviewed by the promotion panel. (Lowden depo. 28:8-16)

55. After withdrawing Plaintiff's resume from the list of candidates to be interviewed by the promotion panel, Melissa Morgan-Lowden had a very brief conversation with Jeffrey

Bobich about why she was withdrawing Plaintiff's resume from the list of candidates to be interviewed. (Lowden depo. 29:5-22; 30:1)

56. Although Christine Burris was a member of the promotion panel, she was not consulted on this resume withdrawal.

57. Melissa Morgan-Lowden stated in her deposition that she did not send Plaintiff's resume forward for an interview because she did not believe that Plaintiff's resume met the "focus and criteria that we were using in evaluating the resumes, we were looking for examples within the resumes of strong internal controls experience, strong leadership, both leading projects and leading people…" (Lowden depo. 28:17-22)

58. As Deputy Director in the Financial Management Division, OCFO, Melissa Morgan-Lowden had observed Plaintiff's work performance and was aware that Plaintiff had led projects and people, had strong internal controls experience, had considerable expertise with bankcard policy, and had supervised DHS employees at the time Ms. Morgan-Lowden reviewed the resumes of persons on the Best Qualified list that had been sent to the promotion panel by the DHS Office of the Chief Human Capital Officer.

59. Thus, Melissa Morgan-Lowden and Jeffrey Bobich failed to follow standard and proper OPM and DHS promotion selection procedures, which calls for non-discrimination by race, sex and age in the identification and selection of candidates, when they withdrew Plaintiff's name from the Best Qualified list of candidates to be interviewed by the entire promotion panel because of her race, age, and sex. (5 CFR §335.103(b)(1)).

60. During the evaluation of and selection from the 47 candidates on the Best Qualified list, Melissa Morgan- Lowden did not consider the performance evaluations and awards that the candidates received when she evaluated the candidates on the Best Qualified list.

61. Federal OPM and DHS promotion procedures require that "… [d]ue weight shall be given to performance appraisals and incentive awards," when evaluating candidates during the promotion process. (5 CFR §335.103(b)(3)).

62. Thus, Jeffrey Bobich and Melissa Morgan-Lowden failed to follow standard and proper OPM and DHS promotion selection procedure, which calls for considering candidates' performance evaluations and awards when selecting candidates during the promotion process. This failure constituted racial, sex and age discrimination against Plaintiff.

63. Jeffrey Bobich and Melissa Morgan-Lowden, on behalf of the promotion panel, selected six persons (three of whom were from outside DHS), including Robert Taylor who is Caucasian, for the first of two personal interviews. Furthermore, despite being on DHS's "Best Qualified," fully meeting the specialized experience requirement in the job announcement, having a resume showing her management of and extensive experience with the DHS Bankcard Program, Plaintiff was not selected for an interview for the Supervisory Financial Management Specialist job vacancy by Jeffrey Bobich and Melissa Morgan-Lowden.

64. After Jeffrey Bobich and Melissa Morgan-Lowden selected six candidates from the Best Qualified list for the first interview, they allowed Christine Burris, who is African-American and Asian, to participate in the interviews, which were conducted between September 8, 2016 and September 12, 2016, of the candidates that they had selected.

65. According to Jeffrey Bobich's and Melissa Morgan-Lowden's affidavits, members of the promotion panel asked each interviewee a list of questions and the panelist met after the interviews to discuss each candidate. The promotion panel, however, failed to make or keep any notes or rating sheets of the promotion panel's personal interviews.

66. Federal OPM and DHS selection procedures require that "[a]dministration of the promotion system will include recordkeeping … [e]ach agency must maintain a temporary record of each promotion sufficient to allow reconstruction of the promotion action, including documentation on how candidates were rated and ranked." 5 CFR §335.103(b)(5).

67. The DHS promotion panel failed to follow standard and proper OPM and DHS promotion selection procedures when it failed to make and retain records or notes of the personal interviews of each interviewee.

68. An agency's deviation from OPM or its own standard selection procedures (adopted from OPM) in promotion, such as failing or refusing to make and retain written records of the interview process can be sufficient to raise an inference of discrimination at the motion-to-dismiss stage of a race discrimination action under Title VII of the Civil Rights Act of 1964. *Jones v. Ottenberg's Bakers, Inc.*, 999 F. Supp. 2d 185 (D.D.C. 2013).

69. After participating in the interviews of candidates from the Best Qualified list, Christine Burris, who is African-American and Asian, recommended that the promotion panel include Rothley Howard, an African-American male, over 40-years-old, who had several years of travel card specialized experience and other excellent credentials, as one of the candidates to interview in the second round of personal interviews for the Supervisory Financial Management Specialist job.

70. Jeffrey Bobich and Melissa Morgan-Lowden, on behalf of the promotion panel, subsequently conducted a second round of interviews on September 16, 2014 of only two interviewees for the Supervisory Financial Management Specialist job vacancy: Rothley Howard, who is African-American, and Robert Taylor, who is Caucasian.

15

71. Jeffrey Bobich and Melissa Morgan-Lowden again excluded Christine Burris, who is African-American and Asian, and who was a member of the promotion panel, from participating in the second round of interviews just as she had been excluded from the initial selection process of the candidates from the Best Qualified list.

72. Therefore, Christine Burris was never given the opportunity by Jeffrey Bobich and Melissa Morgan-Lowden to participate in the interview of Rothley Howard in the second round interview.

73. Thus, the DHS promotion panel again failed to follow standard and proper OPM and DHS promotion selection procedures, which calls for non-discrimination in the selection process, when it failed to allow Christine Burris to participate in the second round of interviews in which another African-American, Rothley Howard, was being interviewed for the position of Supervisory Financial Management Specialist. (5 CFR §335.103(b)(1)).

74. An agency's deviation from OPM or its own standard selection procedures (adopted from OPM) in promotion, such as failing or refusing to allow an African-American and Asian panel member to fully participate in the selection process can be sufficient to raise an inference of discrimination at the motion-to-dismiss stage of a race discrimination action under Title VII of the Civil Rights Act of 1964. *Jones v. Ottenberg's Bakers, Inc.*, 999 F. Supp. 2d 185 (D.D.C. 2013).

75. Jeffrey Bobich, Director, Financial Management Division, OCFO, after conferring with Melissa Morgan-Lowden, Deputy Director, Financial Management Division, OCFO, determined that Robert Taylor, who is Caucasian, was the better of the two candidates and promoted him from staff accountant, GS-14, to fill the Assistant Director, Bankcard

and Review (Supervisory Financial Management Specialist), GS-15, job vacancy, in the OCFO, effective October 6, 2014.

76. Jeffrey Bobich's stated reasons for promoting Robert Taylor are that in interviewing candidates and making a selection, the promotion panel focused on: (1) ability to lead projects and people; (2) technical subject matter expertise, and (3) ability to lead change from a department-wide perspective, working with external customers and stakeholders outside the immediate span of control. Mr. Bobich also stated that the selectee had better formal education and certificates; that the position had "evolved" between 2012 and 2014; and that selectee had worked on three projects while he worked as a staff accountant**.**

77. The stated reasons articulated by Jeffrey Bobich and DHS for promoting Robert Taylor instead of Plaintiff to the Assistant Director Bankcard and Review (Supervisory Financial Management Specialist) job are pretextual.

78. One can establish pretext, in a non-selection case, by showing that the Plaintiff's qualifications were demonstrably superior to those of the selectee. *Bauer v. Bailer*, 647 F.2d 1037, 1048 (10th Cir. 1981).

79. Plaintiff's qualifications for the Supervisory Financial Management Specialist job vacancy were demonstrably superior to those of the selectee, Robert Taylor.

80. The job being filled was essentially a Bankcard Programs Managers job similar to the one that Plaintiff had prior to leaving the Financial Management Division in 2012. (Exhibits A and B).

81. Jeffrey Bobich's admitted that Supervisory Financial Management Specialist was a bankcard program manager job in an October 7, 2014 memorandum that he wrote to the

Financial Management Working Group (upper level managers), regarding the promotion, when he stated: "I am pleased to announce the appointment of Robert Taylor as Assistant Director of Financial Management for Bankcard and Review… Mr. Taylor replaces Thomas Boyd who retired earlier this year… **In his new role, Mr. Taylor will oversee the Department's Bankcard Programs (Purchase Card, Travel Card, and Fleet Card)." (emphasis added).**

82. In her deposition, Melissa Morgan-Lowden also admitted that the promotion panel was seeking an "assistant director … to oversee the Bank Card Program." Lowden Dep. 15:17-19.

83. Under Job Announcement No. DHSHQ14-1162987, the Supervisory Financial Management Specialist job required "overseeing all of the Department's government charge card programs, most significantly the purchase card, travel card, and fleet fuel card program … supervises a headquarters oversight staff and provides guidance to staff in the DHS component organizations that are responsible for execution of these programs." Exhibit A

84. Based on these criteria, Plaintiff's qualifications for the job were plainly superior to Robert Taylor's. Plaintiff had worked as DHS Bankcard Manager from 2006 to 2012 and had overseen DHS's charge card programs, had supervised a headquarters oversight staff of four employees, and had provided guidance to staff in DHS's component organizations, whereas Robert Taylor had no bankcard policy experience, had not supervised any DHS employees, and had not provided guidance to DHS component organizations on bankcard policy at the time he obtained the Assistant Director Bankcard and Review job.

85. The reasons cited in paragraph 76 above for promoting Robert Taylor instead of Plaintiff are pretextual, as well, in that Plaintiff had: (1) shown the ability to lead projects and people having supervised a staff of four persons on bankcard projects and other financial matters; and in doing so, received above average performance evaluations during her entire tenure as the DHS Bankcard Program Manager between 2006 and 2012. By contrast, Robert Taylor was a staff accountant in the Policy Branch of the Financial Management Division; and in that capacity, he did not have any responsibilities supervising a team of employees; (2) Plaintiff had excellent technical subject matter expertise according to her performance evaluations and her supervisor Thomas Boyd who testified to her technical subject matter abilities. As stated, Robert Taylor had no technical experience in the crucial area of bankcard policy; (3) Plaintiff did an excellent job leading change from a department-wide perspective as evidenced by her work with external customers and stakeholders outside her unit, such as Colette Volmer, Paula Lyons, and Ruthanne Beck, all of whom held GS-14 positions in other DHS components. All lauded Plaintiff's work performance. Robert Taylor had no such experience as indicated by the fact that they all testified that they had no interaction with Robert Taylor prior to his obtaining the Assistant Director Bankcard and Review job.

86. Mr. Bobich also states that his decision to promote Robert Taylor instead of Plaintiff was also based on his belief that the Supervisory Financial Management Specialist job "had evolved" in the two years from the time Plaintiff left the Bankcard and Review branch of the Financial Management Division in 2012.

87. At the time of the promotion selection process for the Supervisory Financial Management Specialist position, which began in June 2014, Jeffrey Bobich had only held the position

of Director, Financial Management Division, OCFO, since January 2014 – six months, and would not have known whether the Bankcard Program had evolved in two years since Plaintiff's departure in 2012.

88. Furthermore, during the EEO investigatory process and EEOC discovery process, neither Jeffery Bobich nor Melissa Morgan-Lowden were able to provide any information or documentation to support their allegation that the Assistant Director of Bankcard and Review position "had evolved" in the two years Plaintiff was away from the Financial Management Division.

89. In addition, Jeffery Bobich and Melissa Morgan-Lowden did not permit Plaintiff an opportunity to discuss her ability to perform the job assuming that the job had "evolved" between 2012 and 2014.

90. In making his decision to promote Robert Taylor to the Assistant Director of Bankcard and Review position, Mr. Bobich also stated that he considered the fact that Robert Taylor had more formal education and certificates than Plaintiff. In making this argument, Mr. Bobich again failed to follow the guidelines of Job Announcement No. DHSHQ14-1162987 when he promoted Robert Taylor. The job announcement specifically states that: "Substitution of education in lieu of specialized experience may not be used for this grade level."

91. Therefore, Jeffrey Bobich again deviated from standard and proper DHS selection procedure, which calls for promoting candidates based on merit and "job-related criteria," when he considered the selectee's formal education and certificates in lieu of specialized experience when making his decision to promote Robert Taylor. (5 CFR §335.103(b)(1))

92. Finally, Jeffrey Bobich sets forth three of Robert Taylor's alleged work projects as legitimate reasons to promote Robert Taylor to the Supervisory Financial Management Specialist position instead of Plaintiff. Mr. Bobich states that Robert Taylor had experience with the DHS Conference Approval Process, reporting the DHS Statement of Net Cost by Major Mission, and multiple investigations of potential Anti-Deficiency Act violations across the department.

93. DHS's stated reasons cited in paragraph 92 above for promoting Robert Taylor are pretextual because these work projects had little or no relationship to the Bankcard Program job and should not have been used as a basis to promote Robert Taylor.

94. The Federal government mandate for The Statement of Net Cost simply provides a summary of DHS's financial data explaining the major sources of and use of funds. This project was unrelated to the Bankcard Program which is a government charge card program that provides a procurement mechanism for small purchases and allows travelers to travel on official government business. This project, therefore, should not have been used as a basis to promote Robert Taylor.

95. The DHS Conference Approval Process task is a means to consolidate DHS's components' requests to attend a conference. This again was not related to the Bankcard Program and should not have been used as a basis to promote Robert Taylor.

96. Multiple investigations of potential Anti-Deficiency Act (ADA) violations pertain to investigating instances in which federal employees may have failed to comply with laws appropriating and authorizing the use of federal funds. The ADA prohibits (subject to the possibility of civil and criminal penalties) federal employees from spending money for a purpose different from that authorized by Congress. This project was not relevant to the

Bankcard Program because there is no mechanism at the DHS bankcard level to determine which appropriation is used, augmented or misappropriated. Therefore, this project was not related to the Bankcard Program and should not have been used as a basis to promote Robert Taylor.

97. Again, Jeffrey Bobich and the DHS promotion panel failed to adhere to OPM and DHS selection procedure, which seeks to promote candidates based on merit, when he considered work projects that had little or no relationship to the Supervisory Financial Management Specialist job when he made the decision to promote Robert Taylor instead of Plaintiff.  (5 CFR §335.103(b))

98. Thomas Boyd, who supervised Robert Taylor at the same time he supervised Plaintiff, was surprised when he learned that Robert Taylor had been promoted to the Assistant Director, Bankcard and Review Branch (Supervisory Financial Management Specialist) job instead of Plaintiff because he thought that Plaintiff was substantially more qualified than Robert Taylor for the job due to her extraordinary bankcard knowledge and understanding of complex financial matters.

99. When Thomas Boyd supervised both Robert Taylor and Plaintiff, he stated that he would ask Plaintiff to accompany him to all upper level management meetings involving Bankcard policy issues due to her exceptional command of Bankcard and Financial policy.

100.  When Thomas Boyd supervised Robert Taylor, he never assigned Robert Taylor to any significant Bankcard matters because he did not believe Robert Taylor had the knowledge or technical skill to handle them. Thus, Thomas Boyd was surprised when he

saw a copy of a performance evaluation for evaluation period (2011-2012) that showed Robert Taylor had been assigned Bankcard matters during Thomas Boyd's tenure.

101. When Thomas Boyd supervised Plaintiff in 2011 and 2012, Melissa Morgan-Lowden, Deputy Director, Financial Management Division, OCFO, and Larry Bedker, Director, Office of Financial Management Division, OCFO, were his supervisors.

102. When Thomas Boyd supervised Plaintiff in 2011 and 2012, Melissa Morgan-Lowden and Larry Bedker, Director, Office Financial Management, OCFO, never mentioned any difficulties that they may have had with Plaintiff's work performance as the DHS Bankcard Program Manager or how the Program was being run.

103. When Thomas Boyd supervised Plaintiff in 2011 and 2012, he did not hear any criticism from any managers about any of Plaintiff's work performance as the DHS Bankcard Program Manager.

104. Christine Burris, who is African-American and Asian, left DHS shortly after Plaintiff filed her employment discrimination suit with the EEOC against DHS in May 2015.

105. Rothley Howard, who is an African-American male, over 40-years-old, left DHS shortly after he was bypassed for the Assistant Director Bankcard and Review (Supervisory Financial Management Specialist), GS-15, position in 2014.

## CAUSES OF ACTION

## COUNT 1

## PROMOTION DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF 42 U.S.C.§ 2000e

106. Plaintiff Wilson incorporates paragraphs 1 through 105 of this Complaint as if fully set forth herein.

107. Under the provisions of 42 U.S.C. § 2000e, as amended, it is unlawful for an employer to discriminate against an employee in promotions on the basis of the employee's race.

108. Plaintiff Wilson is a 57-years-old, African-American female and was discriminated against by Defendant DHS in 2014, when Defendant failed to promote her to the Supervisory Financial Management Analyst position for which she qualified; and instead, promoted a 36-year-old Caucasian male, Robert Taylor, to fill the position for which Plaintiff Wilson applied. *McDonnell Douglas v Green*, 411 U.S. 792, 802 (1973).

109. Defendant's stated reasons for selecting Robert Taylor instead of Plaintiff for the Supervisory Financial Management Specialist position are pretextual since Plaintiff's qualifications were demonstrably superior to the selectee's (*Bauer v. Bailar*, 647 F. 2d 1037, 1048 (10th Cir. 1981), and defendant deviated from standard OPM and DHS promotion selection procedures and considered selectee's unrelated work projects and formal education when DHS made its promotion decision. *Hurlbert v. St. Mary's Health Care Sys.,* 439 F.3d 1286,1299 (11th Cir. 2006); *Jones v. Ottenberg's Bakers, Inc.*, 999 F. Supp. 2d 185(D.D.C. 2013); *Brown v. Chertoff*, 563 F. Supp. 2d 1372, 1378 (S.D. Ga. 2008); and *Conner v. Sun Trust Bank*, 546 F. Supp. 2d 1360, 1374-75(N.D. Ga. 2008).

110. Therefore, Defendant's actions in unlawfully failing to promote Plaintiff Wilson constitute race discrimination in violation of 42 U.S.C.§2000e et seq. *Reeves v. Sanderson Plumbing*, 530 U.S. 133 (2000).

111. As a proximate result of Defendant's actions, as outlined above, Plaintiff Wilson has in the past and will in the future suffer mental and emotional harm, anguish, humiliation, embarrassment, loss of dignity, lost wages and benefits, and lost earning capacity.

112. Plaintiff Wilson, therefore, requests relief as set forth in more detail below.

## COUNT 2

## PROMOTION DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF 42

## U.S.C.§ 2000e

113. Plaintiff Wilson incorporates paragraphs 1 through 112 of this Complaint as if fully set forth herein.

114. Under the provisions of 42 U.S.C. § 2000e, as amended, it is unlawful for an employer to discriminate against an employee in promotions on the basis of the employee's sex.

115. Plaintiff Wilson is a 57-years-old, African-American female and was discriminated against by Defendant DHS in 2014 when Defendant failed to promote her to the Supervisory Financial Management Analyst position for which she qualified; and instead, promoted a 36-year-old Caucasian male, Robert Taylor, to fill the position for which Plaintiff Wilson applied. *McDonnell Douglas v Green*, 411 U.S. 792, 802 (1973).

116. Defendant's stated reasons for selecting Robert Taylor instead of Plaintiff for the Supervisory Financial Management Specialist position are pretextual since Plaintiff's qualifications were demonstrably superior to the selectee's (*Bauer v. Bailar*, 647 F. 2d 1037, 1048 (10th Cir. 1981)), and defendant deviated from standard OPM and DHS promotion selection procedures and considered selectee's unrelated work projects and formal education when DHS made its promotion decision. *Hurlbert v. St. Mary's Health Care Sys.,* 439 F.3d 1286,1299 (11th Cir. 2006); *Jones v. Ottenberg's Bakers, Inc.*, 999 F. Supp. 2d 185(D.D.C. 2013); *Brown v. Chertoff*, 563 F. Supp. 2d 1372, 1378 (S.D.Ga. 2008); *Conner v. Sun Trust Bank*, 546 F. Supp. 2d 1360, 1374-75 (N.D. Ga. 2008).

117. Therefore, Defendant's actions in unlawfully failing to promote Plaintiff Wilson constitute sex discrimination in violation of 42 U.S.C.§2000e et seq. *Reeves v. Sanderson Plumbing*, 530 U.S. 133 (2000).

118. As a proximate result of Defendant's actions, as outlined above, Plaintiff Wilson has in the past and will in the future suffer mental and emotional harm, anguish, humiliation, embarrassment, loss of dignity, lost wages and benefits, and lost earning capacity.

119. Plaintiff Wilson, therefore, requests relief as set forth in more detail below.

## COUNT 3

## PROMOTION DISCRIMINATION ON THE BASIS OF AGE IN VIOLATION OF 42 U.S.C.§ 2000e

120. Plaintiff Wilson incorporates paragraphs 1 through 119 of this Complaint as if fully set forth herein.

121. Under the provisions of 42 U.S.C. § 2000e, as amended, it is unlawful for an employer to discriminate against an employee in promotions on the basis of the employee's age.

122. Plaintiff Wilson is a 57-years-old, African-American female and was discriminated against by Defendant DHS in 2014 when Defendant failed to promote her to the Supervisory Financial Management Analyst position for which she qualified and instead promoted a 36-year-old Caucasian male, Robert Taylor, to fill the position for which Plaintiff Wilson applied. *McDonnell Douglas v Green*, 411 U.S. 792, 802 (1973).

123. Defendant's stated reasons for selecting Robert Taylor instead of Plaintiff for the Supervisory Financial Management Specialist position are pretextual since Plaintiff's

qualifications were demonstrably superior to the selectee's (*Bauer v. Bailar*, 647 F. 2d 1037, 1048 (10th Cir. 1981)), and defendant deviated from standard OPM and DHS promotion selection procedures and considered selectee's unrelated work projects and formal education when DHS made its promotion decision. *Hurlbert v. St. Mary's Health Care Sys.,* 439 F.3d 1286,1299 (11th Cir. 2006); *Jones v. Ottenberg's Bakers, Inc.*, 999 F. Supp. 2d 185(D.D.C. 2013); *Brown v. Chertoff*, 563 F. Supp. 2d 1372, 1378 (S.D. Ga. 2008); *Conner v. Sun Trust Bank*, 546 F. Supp. 2d 1360, 1374-75(N.D. Ga. 2008).

124. Therefore, Defendant's actions in unlawfully failing to promote Plaintiff Wilson constitute age discrimination in violation of 42 U.S.C.§2000e et seq. *Reeves v. Sanderson Plumbing*, 530 U.S. 133 (2000).

125. As a proximate result of Defendant's actions, as outlined above, Plaintiff Wilson has in the past and will in the future suffer mental and emotional harm, anguish, humiliation, embarrassment, loss of dignity, lost wages and benefits, and lost earning capacity.

126. Plaintiff Wilson, therefore, requests relief as set forth in more detail below.

## **RELIEF**

**WHEREFORE,** Plaintiff, Peggy Wilson, respectfully prays that the Court enter an Order that:

A. Declares Defendant's conduct complained of herein to be in violation of the Plaintiff's rights under 42 U.S.C. § 2000e, as amended;

B. Permanently enjoins Defendant and its officers from engaging in conduct that violates 42 U.S.C. § 2000e;

C. Awards Plaintiff compensatory damages pursuant to 42 U.S.C.§2000e, as amended;

D. Awards Plaintiff the value of backpay and all compensation and benefits lost as a result of defendant's unlawful conduct pursuant to 42 U.S.C.§2000e, as amended;

E. Awards Plaintiff punitive damages pursuant to 42 U.S.C.§2000e, as amended;

F. Awards Plaintiff front pay pursuant to 42 U.S.C. §2000e, as amended;

G. Awards reasonable attorney's fees, interest as provided by law, and the costs of this action pursuant to applicable law.

H. Awards other relief as the Court deems equitable and just.

## JURY DEMAND

The Plaintiff hereby demands a trial by jury of all issues herein.

Respectfully submitted,

By: _____

Larry G. Ward, Esq.
D. C. Bar No.419105
P.O. Box 1137
2 Massachusetts Avenue, N.E.
Washington, D.C. 20002
Telephone: 301-325-2468